STATE OF CONNECTICUT *v.* LEONARDO MONTOYA
(AC 28164)

Bishop, Beach and Foti, Js.

Argued May 28—officially released September 2, 2008

*Mary H. Trainer*, special public defender, for the appellant (defendant).

*Tamara A. Grosso*, special deputy assistant state's attorney, with whom were *Michael E. O'Hare*, supervisory assistant state's attorney, and, on the brief, *Jonathan C. Benedict*, state's attorney, and *Pamela J. Esposito*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Leonardo Montoya, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). On appeal, the defendant claims that he is entitled to a judgment of acquittal because the evidence adduced at trial was insufficient to sustain the conviction and that the prosecutor engaged in a pattern of impropriety that deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was a Roman Catholic seminarian in Colombia who came to the United States to continue his religious studies. He became friendly with the sixteen year old victim, T,[1] her father and her stepmother

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

when he assisted with the baptism of T's stepbrother. The defendant often visited the family at the home of T's father in Bridgeport and had, at one point, counseled T via e-mail about dreams she was experiencing.

T lived in Waterbury with her mother and stepfather but sometimes spent weekends with her father in Bridgeport. On Saturday, November 29, 2003, T wanted to attend a small farewell party at her father's house in honor of the extended vacation that her father and stepmother were planning on taking to Colombia the following Friday. As her father was still working, he asked the defendant to drive to Waterbury to bring T to Bridgeport.

The defendant agreed and, accompanied by T's stepmother and her young son, drove to Waterbury, picking up T from her mother's home around 5:30 p.m. On the return trip, T's stepmother sat in the rear seat with her sleeping son, leaving T in the front passenger seat with the defendant driving. During the trip, the defendant touched T's knee. While T did not like this contact, she was not scared and did not mention it to her parents.

When they arrived in Bridgeport, they went to the kitchen where T's stepmother prepared food. Shortly thereafter, three adult female friends of the family and a boy arrived. T's father came home around 7 p.m. After eating dinner, T went upstairs with her stepbrother and the other boy while the adults remained downstairs drinking Colombian liquor until about 9 or 10 p.m. At this point, the female guests and the boy left. T took a shower and went to bed in her room alone.

Around 1 a.m., the defendant entered T's room and woke her by pulling at her bedsheets and telling her she had pretty eyes. T yelled at the defendant, who smelled of alcohol, telling him to go away. When the defendant just giggled, T got up and pushed him out the door. T then went back to sleep.

At approximately 5:45 a.m., T awoke again because her cellular telephone alarm began ringing. T picked it up, opened it and saw that there was a message from her boyfriend. By the light of her telephone, T noticed that the defendant was asleep in the other twin bed in her room. T then rolled over and went back to sleep. The next time she woke up, she heard the wooden floorboards creak as someone walked out of her bedroom and used the bathroom. She then heard the door shut as the person came back into her room. T took the comforter off her face and saw a man standing over her bed. Thinking it was her father, as he had mentioned he wanted to talk to her the previous night, she rolled away and pulled the covers over her head again.

At this point, she felt the mattress sink and the comforter move as if someone was trying to lift it. Next, she felt a tingling sensation on her upper thigh. The tingling sensation moved up, and she felt her "private area," or vagina, being rubbed from behind. Though the comforter was still over her head, T could hear breathing over her. When T realized that the defendant was touching her, she sprang from the bed and ran to her father's and stepmother's room where she started yelling about what had happened to her. T and her stepmother then went to T's room where they saw the defendant, awake, lying on top of the covers of his bed looking at the ceiling. T began shouting at the defendant and accusing him of touching her. This woke her father, who came running into the room. When T told her father that the defendant had touched her, he ordered the defendant to leave. In response, the defendant replied, "It's a lie."

T went downstairs with her stepmother and had a glass of water. When the defendant came downstairs, T threw the water at him. After the defendant left, T told her father and stepmother that she wanted to go home. They called her mother, who instructed them to

bring T home so that she could take her to the police station to file a report. Upon arriving home, T went to the police station with her mother and filed a report about the incident.

The day after the incident, T was very upset. She felt suicidal and threatened to kill one of her teachers at school. T was checked into the psychiatric wing of a hospital where she remained for four days. Upon her release from the hospital, T was prescribed medicine, and she was still taking antidepressants at the time of the trial. T had no history of such episodes before the incident in question.

At the conclusion of the state's case-in-chief, and again after the close of evidence, the defendant moved for a judgment of acquittal on the basis that there was insufficient evidence to find him guilty of sexual assault. The court denied both motions. Thereafter, the defendant was convicted and sentenced to the custody of the commissioner of correction for a total effective sentence of one year incarceration, execution suspended after ninety days, with three years probation. This appeal followed.

I

The defendant claims that there was insufficient evidence to convict him of sexual assault in the fourth degree. Specifically, the defendant argues that he is entitled to an acquittal both because T's testimony was inconsistent and, therefore, not credible and because the state failed to prove that he was the perpetrator of the sexual assault. We disagree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences

reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence that it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would

support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

With this standard in mind, we turn now to the elements of sexual assault in the fourth degree. Section 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . ." For the purposes of this case, the term "sexual contact" means "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor. . . ." General Statutes § 53a-65 (3). "Intimate parts" as applicable here means the genital area. See General Statutes § 53a-65 (8). Sexual contact can be indirect and through clothing as long as it occurs for the purpose of sexual gratification. *State* v. *Eric T.*, 8 Conn. App. 607, 613, 513 A.2d 1273 (1986).

When reviewing the facts in the light most favorable to sustaining the verdict, it is plain that the state met its burden of establishing that T was sexually assaulted. T testified that she saw the defendant sleeping in the bed next to hers and, shortly after, she heard someone leave her room, go to the bathroom and return, and felt the bed sink and something rubbing her vagina. When T realized that she was being touched, she jumped up and ran to alert her family. When she returned with her stepmother and father, the defendant was lying on the bed awake. At trial, T testified that the she did not want the defendant to touch her in this manner. Finally, the fact that the defendant chose to touch T's vagina is evidence of his intent to commit a sexually gratifying act. See id., 614.

Though labeled as a challenge to the sufficiency of the evidence, the defendant's claim rests on an assessment of T's credibility. The defendant claims that the report that T provided to the police contradicted her trial testimony in numerous ways, thereby, rendering her unbelievable. In reviewing the alleged discrepancies, we conclude that none of them was central to the elements that the state was required to prove. Furthermore, T was subject to cross-examination, and the defendant does not claim that his cross-examination was unduly limited. "Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Liborio A.*, 93 Conn. App. 279, 284, 889 A.2d 821 (2006). "Testimony is not rendered inadmissible merely because it is uncorroborated or has inconsistencies." *State* v. *Bazemore*, 107 Conn. App. 441, 458, 945 A.2d 987, cert. denied, 287 Conn. 923, 951 A.2d 573 (2008).

The defendant also claims that because T did not actually see him touching her, the state failed to prove that he was the perpetrator. At trial, T's father, stepmother, T and the defendant himself testified that aside from T's father, the defendant was the only adult male in the house at the time of the incident. T testified that she saw the defendant lying in the bed next to hers during the night and that when she returned to her room with her father and stepmother, the defendant was lying on his bed, awake, staring at the ceiling. "[T]he question of [the] identity of a perpetrator of a crime is a question of fact that is within the sole province of the jury to resolve. . . . The rule is that the jury's function is to draw whatever inferences from the evidence

or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Ortiz*, 71 Conn. App. 865, 881, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002). Consequently, the jury was free to draw the reasonable inference that because everyone else in the house was accounted for and in light of the defendant's earlier conduct toward T, it was he who had sexually assaulted T. Because the jury reasonably could have determined that T was sexually assaulted by the defendant, we conclude that the court properly denied his motions for a judgment of acquittal.

## II

The defendant next argues that the prosecutor engaged in a pattern of improper conduct that deprived him of a fair trial. Specifically, the defendant claims that the prosecutor argued facts that were not in evidence and appealed to the emotions of the jury during her closing argument, thereby depriving him of a fair trial. We disagree.

At the outset, we note that the defendant did not object to the two alleged instances of prosecutorial impropriety during trial. This failure to object, however, does not preclude review because when the claim is prosecutorial impropriety, "it is unnecessary for the defendant to seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." *State* v. *Stevenson*, 269 Conn. 563, 572–73, 849 A.2d 626 (2004). The right to challenge alleged prosecutorial impropriety cannot be limited by a failure to object because inherent in a claim of this sort is the constitutional right to a fair trial. Id., 573.

"In analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two

steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . Only if we conclude that prosecutorial [impropriety] has occurred do we then determine whether the defendant was deprived of his due process right to a fair trial." (Citation omitted; internal quotation marks omitted.) *State* v. *H. P. T.*, 100 Conn. App. 183, 186, 917 A.2d 586, cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007).

Accordingly, we first determine if impropriety occurred. The defendant first claims that the prosecutor's comments during closing argument regarding his seminary school training overreached the facts in evidence. It is axiomatic that "[s]tatements as to facts which have not been proven amount to unsworn testimony that is not the subject of proper closing argument." *State* v. *Williams*, 204 Conn. 523, 544, 529 A.2d 653 (1987). The defendant argues that the prosecutor improperly breached this standard with the following statements:

"A few points. Defense counsel argues that the defendant's testimony is consistent. Consistent with what? Consistent with his testimony. Okay. That's fine. Did you hear the defendant testify that at the seminary he received training? Training for what? Training on how to speak to people, on how to garner their trust, how to be a leader, how to provide guidance and emotional support. Just like [T's] family let him into their home, and trusted him—like [T] trusted him."

Contrary to the defendant's claim, we believe the prosecutor's comments in this regard fairly flowed from the evidence and reasonable inferences the jury could draw from it. The defendant testified at trial that he received training in counseling people while he was a

seminary student. In light of this testimony, the prosecutor did not stray outside the record when she suggested that the jury infer that such an individual would know how to speak to people to garner their trust and would know how to provide guidance and emotional support. We therefore see no impropriety in the prosecutor's remarks concerning the defendant's training.

The defendant next claims that the prosecutor improperly appealed to the emotions of the jury in her closing arguments. "It is well established that, [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . We have stated that such appeals should be avoided because they have the effect of diverting the jury's attention from [its] duty to decide the case on the evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Bermudez*, 274 Conn. 581, 595–96, 876 A.2d 1162 (2005), aff'd after remand, 95 Conn. App. 577, 897 A.2d 661 (2006).

The defendant claims that the prosecutor improperly appealed to the emotions of the jury during closing argument when she stated about the victim: "She has lost trust. Didn't she say she was heartbroken? She has lost trust, she has lost innocence. Hasn't she lost some happiness, too? Hasn't she lost some inner peace? She's sixteen years old, she testified she's on antidepressants. Lost, lost, lost, lost. All lost to this man. To this man, who—you know, we'll never know why. Whether it was some sort of horrible plan or if this was just some sudden lapse of really bad judgment. In those few moments, the state argues that she lost all those things to this man." Although some portions of the prosecutor's comments in this instance were related to T's testimony regarding the impact of the assault on her,

we agree with the defendant that the comments of the prosecutor went too far.

Although T testified at trial that the defendant's actions left her "heartbroken" and that she was still taking antidepressants, the prosecutor put an overly dramatic gloss on this testimony by painting a picture of the victim with such emotionally laden words as "innocence," happiness" and "inner peace" and through her repeated use of the word "lost." Even though the prosecutor's statements were grounded in evidence, her language invoked overly sympathetic images of the victim that improperly appealed to the emotions of the jury.

Having established that the prosecutor's statements were improper, we now determine whether the prosecutor's impropriety so infected the trial with unfairness that it rendered the defendant's conviction a denial of his right to due process. In *State* v. *Williams*, supra, 204 Conn. 540, our Supreme Court enumerated six factors that guide this determination. These factors include the extent to which the impropriety was invited by defense conduct, the severity and frequency of the impropriety, the centrality of the impropriety to the critical issues in the case, the strength of the state's case and the effectiveness of the curative measures adopted. Id. After weighing all of the factors, we do not believe that the defendant was deprived of his right to a fair trial.

First, the state concedes that defense counsel did not specifically invite the prosecutor's comments. Next, in determining whether prosecutorial impropriety was severe, we consider it highly significant that defense counsel did not object to the remarks when made, did not request curative instructions and did not move for a mistrial. See *State* v. *Thompson*, 266 Conn. 440, 479, 832 A.2d 626 (2003). "A failure to object demonstrates

that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Fauci*, 282 Conn. 23, 51, 917 A.2d 978 (2007).

As to the frequency of the impropriety, the prosecutor's comments occurred during closing argument only, the comments were based on evidence admitted at trial and were only a small portion of the state's summation. See *State* v. *Kelly*, 106 Conn. App. 414, 434, 942 A.2d 440 (2008). Next, although the prosecutor's statements were an overt appeal to the jury's emotions, the subject of her statements, the impact of the assault on T, was not an element of sexual assault in the fourth degree. Consequently, we conclude that the prosecutor's comments were not central to a critical issue in the case.

As to the strength of the state's case, we note that our Supreme Court has stated that cases that lack conclusive physical evidence and are merely credibility contests are not particularly strong cases. See *State* v. *Ceballos*, 266 Conn. 364, 416, 832 A.2d 14 (2003). Although it is true that the strength of this case relies heavily on a credibility determination between the defendant and T, T's accusations regarding the defendant were supported by the circumstantial evidence regarding the location and status of her father and stepmother at the time of the assault, as well as the defendant's state when T and her father and stepmother returned to the bedroom where the assault took place. Finally, we note that the jury heard evidence of T's uncharacteristic emotional mien immediately after the assault took place. Given the facts of this case and the nature of the charged offense, it is not surprising that there was no physical evidence. In sum, we do not consider the state's case as having relied exclusively on a credibility determination between T and the defendant.

Finally, because the defendant failed to object to the impropriety, the court did not provide any specific instructions directed to the improper remarks. Immediately following closing arguments, however, the court gave the jurors the following instruction: "The arguments of counsel are not evidence in the case; they merely provide an opportunity for the lawyers to summarize what they feel the evidence supports or fails to support. But your decision must be based on the evidence in the case. If you find the facts to be in any way different from what counsel argue, then it is your findings that should sway you." When the impropriety is brief and isolated, as it is in this case, the court's general instructions to the jury to decide the case on the facts before it and not on the arguments of counsel serve to minimize harm from impropriety. See *State* v. *Ancona*, 270 Conn. 568, 616–17, 854 A.2d 718 (2004), cert. denied, 543 U.S. 1055, 125 S. Ct. 921, 160 L. Ed. 2d 780 (2005). Accordingly we conclude that in the context of the entire trial, the prosecutor's improper appeal to the emotions of the jury did not deprive the defendant of his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.