STATE OF CONNECTICUT *v.* MICHAEL H.*
(SC 18195)

Katz, Palmer, Vertefeuille, Zarella and Schaller, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom their identities may be ascertained. See General Statutes § 54-86e.

Argued November 19, 2008—officially released May 26, 2009

*Ira B. Grudberg,* with whom was *Trisha M. Morris,* for the appellant (defendant).

*Ronald G. Weller,* senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky,* state's attorney, and *Elizabeth C. Leaming,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J., The defendant, Michael H., appeals[1] from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes (Rev. to 2005) § 53a-73a (a) (1) (A), and risk of injury to a child in violation of General Statutes (Rev. to 2005) § 53-21 (a) (2). On appeal, the defendant claims that: (1) the trial court improperly

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

deprived him of his right to a fair trial when it denied his pretrial motion for a "taint hearing" to assess the reliability and admissibility of the testimony of the victim; and (2) there was insufficient evidence to convict him of both counts. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. The male victim, E, was four years old during the summer of 2005. The defendant, who was married to E's paternal grandmother, was E's stepgrandfather. During that summer, E and his sister, C, occasionally visited the home of their grandmother and the defendant. On at least one occasion, while the defendant and E were seated on the couch, the defendant placed his hand over E's genital area and fondled him.

On August 10, 2005, while using the toilet, E spontaneously told his mother that "sometimes [the defendant] touches my pee-pee." After his mother asked when this occurred, E responded that it occurred when he and the defendant "were watching TV on the couch" at his grandmother's house. The mother then told E that it was not okay for the defendant to touch him in that manner. Immediately after this conversation, the mother went upstairs to question her daughter, C, who was asleep. After informing C about E's disclosure, the mother asked C whether the defendant had touched her private area. C nodded in the affirmative. When the mother asked if the defendant had touched her on the vagina, C indicated in the affirmative. After additional questioning, C indicated to her mother that the touching had occurred while she was sitting on the defendant's lap at his computer and that it had occurred on more than one occasion. As with E, the mother informed C that it was not appropriate for the defendant to touch her private area. After her conversation with C, the mother located E and asked him additional questions. Specifically, she asked where the defendant had

touched him and E responded by placing his hand over his penis and moving his hand in a rubbing motion.

Thereafter, the mother contacted the police who, in turn, contacted the department of children and families (department). On August 11, 2005, Jennifer Benzie, a social worker with the department interviewed both E and C. Benzie interviewed each child separately and conducted the interview pursuant to a method commonly used to interview children who may have been the victims of abuse.[2] Although Benzie interviewed E on two separate occasions, he did not make any disclosures regarding the abuse. C, on the other hand, indicated to Benzie that the defendant had touched her on her vagina on more than one occasion.

Prior to trial, the defendant moved for a "taint hearing" in order to preclude the testimony of E and C, which the defendant argued was unreliable due to allegedly suggestive and coercive questioning by the mother and Benzie. Although the defendant did not take issue with the mother's initial questioning of E after his spontaneous statement,[3] the defendant argued that the mother's questioning of C and her subsequent questioning of E was unduly suggestive because it vilified the defendant and obtained information that was simply E and C assenting to their mother's statements, rather than providing their own independent recollections. Likewise, the defendant argued that Benzie's interview corrupted the reliability of the children's testimony because two aspects of the method that she used— namely, advisements at the beginning of the interview about good touches versus bad touches, and the use

[2] Benzie testified that the method, which was developed by the Corner House Interagency Child Abuse Evaluation and Training Center and is commonly referred to as "RATAC," employs five stages: (1) rapport building; (2) anatomy identification; (3) touch inquiry; (4) abuse inquiry; and (5) closure.

[3] Defense counsel conceded that at that point "the mother's questioning of E was fairly noncontroversial for the purposes of this motion . . . ."

of anatomical drawings—lead to false positive accusations of child abuse. After hearing oral argument, the trial court denied the motion on the grounds that there was no showing that the testimony of either E or C had been the product of suggestive or coercive questioning, and that Connecticut courts have not recognized pretrial taint hearings. The jury acquitted the defendant with respect to the offenses related to C,[4] but convicted the defendant of the charges related to E. The defendant filed a motion to set aside the verdict and render judgment of acquittal, which was denied by the trial court. This appeal followed.

I

We first address whether there was sufficient evidence to support the defendant's conviction of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A), and risk of injury to a child in violation of § 53-21 (a) (2). The defendant principally claims that the evidence was insufficient because: (1) E's testimony was the product of suggestive and coercive influence and was, therefore, unreliable; (2) E's testimony was internally inconsistent; and (3) E failed to identify the defendant in the courtroom. In addition, the defendant claims that the observations made by the mother and E's teacher, Janet Lamarre, about E's behavior were not indicative of abuse. The state contends that the evidence was sufficient to support the conviction on the basis of E's testimony alone. In addition, the state argues that the evidence regarding E's subsequent behavior coupled with the evidence adduced during the defendant's case-in-chief further support the conviction. We agree with the state.

[4] Although the defendant also was charged with sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) and risk of injury to a child in violation of § 53-21 (a) (2) with respect to C, he was acquitted of those charges. Consequently, he challenges only the reliability of E's testimony in this appeal.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . .

"While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 667–69, 804 A.2d 810 (2002).

A

We first address whether the evidence was sufficient to support the defendant's conviction of sexual assault in the fourth degree. General Statutes (Rev. to 2005) § 53a-73a (a) (1) provides in relevant part that a person is guilty of sexual assault in the fourth degree when

"[s]uch person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ." General Statutes § 53a-65 (3) defines " '[s]exual contact' " as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person . . . ." General Statutes (Rev. to 2005) § 53a-65 (8) defines " '[i]ntimate parts' " as "the genital area . . . ." Accordingly, the state was required to present sufficient evidence to prove beyond a reasonable doubt that the defendant had contact with E's genital area for the purpose of sexual gratification or for the purpose of degrading or humiliating him.

We conclude that there was sufficient evidence to support the conviction. At trial, E testified that he and C no longer visited his grandmother's house because the defendant "was doing bad things." When asked what those things were, E responded that the defendant had touched him in his private area.[5] He testified that the touching had occurred on more than one occasion. E further was able to recall approximately how old he was at the time of the abuse, and that the abuse occurred while he was seated on the couch next to the defendant. He also testified that the touching had occurred on top of his clothes and demonstrated how the touching had occurred, namely, that the defendant had rubbed his hands over E's genital area in a back and forth motion. Finally, E testified that sometimes the touching had occurred while his grandmother was in another room.[6] From this testimony alone, there was sufficient evidence that the defendant had contact with the intimate

---

[5] E identified his private area on a demonstrative replica of a boy's body.

[6] At trial, the defendant testified that his wife, the grandmother, always had been present when he was with E and C, and that he did not recall that, over the course of approximately four years, she ever had received a telephone call, gone to the bathroom, or gone to her bedroom during the children's visits.

parts of E for the purposes of sexual gratification.[7] *State v. Whitaker*, 215 Conn. 739, 757 n.18, 578 A.2d 1031 (1990), citing *State v. Hodge*, 153 Conn. 564, 573, 219 A.2d 367 (1966) (testimony of single witness sufficient to support finding of guilt beyond reasonable doubt); see also *State v. Montoya*, 110 Conn. App. 97, 103, 954 A.2d 193 (2008) (that defendant chose to touch victim's vagina evidence of intent to commit sexually gratifying act), cert. denied, 289 Conn. 941, 959 A.2d 1008 (2008).

Moreover, when viewed in a light most favorable to sustaining the verdict, the testimony of other witnesses cumulatively supported several reasonable inferences justifying the jury's finding of sexual abuse. For example, E's mother testified that around the time of his initial disclosure, E had been exposing himself to others, grabbing at C's private areas, and urinating on the floor, both at home and in two incidents on his school bus. Diane Edell, an expert on the behavioral characteristics of child sexual abuse victims, testified that although these behaviors were not necessarily indicative of sexual abuse, the behaviors were suggestive of stress or trauma. Furthermore, during the defendant's case-in-chief, E's grandmother testified that on one

[7] We reject the defendant's claim that E's testimony was insufficient because it was inconsistent and because he failed to identify the defendant in court. Although we recognize that, at times, E's testimony was inconsistent—for example, when first asked if he remembered why he no longer visited his grandmother's house, E responded "no," but later when asked the same question, he responded that he did not visit because the defendant was "doing bad things"—the matter of inconsistencies in testimony and witness credibility are exclusively within the purview of the jury. *State v. Aponte*, 249 Conn. 735, 756, 738 A.2d 117 (1999). Moreover, "the trier of fact may credit part of a witness' testimony and reject other parts." *Hicks v. State*, 287 Conn. 421, 435, 948 A.2d 982 (2008). We also conclude that E's failure to make an in-court identification of the defendant is of no consequence given that the record clearly reflected that E was referring to the defendant, his stepgrandfather.

In addition, although E did not make a disclosure to Benzie at either of her interviews, Susan Berry, a psychologist who had been hired by E's parents, testified that E had made a disclosure to her about the sexual abuse.

occasion E had asked her "if he could touch [the defendant's] private area," and that "[E] had been talking [about] things that [she] thought were not appropriate for a four year old or five year old. He knew too much. He talked about penis, penis, penis, everything out of his mouth."

For the foregoing reasons, we conclude that the evidence was sufficient to support the defendant's conviction of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A).

B

We next address whether there was sufficient evidence to support the defendant's conviction with respect to risk of injury to a child. General Statutes (Rev. to 2005) § 53-21 (a) (2) provides that any person who "has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ." In *State* v. *Alvaro*, 291 Conn. 1, 11 n.12, 966 A.2d 712 (2009), we recognized that although risk of injury to a child and sexual assault in the fourth degree are separate crimes for double jeopardy purposes, "in practice it may be difficult . . . for the state to prove the specific intent requirement under § 53a-73a (a) (1) (A) without also proving the 'sexual and indecent manner likely to impair the health or morals of such child' requirement under § 53-21 (a) (2), and vice versa." Nevertheless, we stated that "the two elements require proof of different facts . . . because the former focuses solely on the perpetrator's intent or purpose in performing the act, whereas the latter requires proof of a likely psychological or physical impact on the victim, regardless of whether the perpetrator specifically

intended such a result. . . . In other words, in contrast to the requirements of § 53a-73a (a) (1) (A), [s]pecific intent is not an element of the crime defined in the second part of § 53-21 . . . . Only an intention to make the bodily movement which constitutes the act which the crime requires, which we have referred to as a general intent, is necessary." (Citations omitted; internal quotation marks omitted.) Id., 11–12 n.12. Although we will not repeat our analysis from part I A of this opinion, much of that analysis applies equally to this issue. Suffice it to say, that the testimony of E and the reasonable inferences drawn from the cumulative force of the other evidence also are sufficient to support a finding that the defendant possessed the general intent to make the bodily movement that constituted the act and, in particular, the testimony of the mother and grandmother support a finding that such contact was likely to, and did in fact, impair the morals of E. Accordingly, we conclude that the evidence was sufficient to support the defendant's conviction of risk of injury to a child in violation of § 53-21 (a) (2).

II

We next address the defendant's claim that the trial court improperly deprived him of his right to a fair trial when it denied his motion for a pretrial taint hearing. Although the defendant acknowledges that Connecticut does not formally recognize pretrial taint hearings, the defendant nonetheless urges this court to adopt the procedure as most notably set forth in *State* v. *Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994). In the present case, the defendant claims that a taint hearing was required to evaluate whether the testimony of E was reliable or whether that testimony had been corrupted as a result of the allegedly suggestive and coercive questioning of E by his mother and Benzie. The state argues that the trial court's ruling was proper because Connecticut law does not recognize taint hearings and that any challenge

to the reliability of a child victim's testimony can be addressed at trial.

"Child abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim." *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 60, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). In order to discover child abuse, investigators often rely on forensic interviews because children's free recall memory tends to be sparse and often omits important details. See S. Ceci & R. Friedman, "The Suggestibility of Children: Scientific Research and Legal Implications," 86 Cornell L. Rev. 33, 45 (2000). This is particularly true for young children in which case fear, embarrassment or loyalty may inhibit them from disclosing instances of abuse. Id. Some research, therefore, has shown that interviews employing directed and leading questions can be useful in securing information regarding abuse. Id., 46. At the same time, we recognize that "[b]ecause [y]oung children are sensitive to the status and power of their interviewers and as a result are especially likely to comply with the implicit and explicit agenda of such interviewers . . . [c]hildren . . . are more willing to go along with the wishes of adults and to incorporate adults' beliefs into their reports. . . . A critical finding of psychological research is that young children, particularly preschool age children, appear to be more suggestible as a basic psychological characteristic than older children and adults." (Citation omitted; internal quotation marks omitted.) *State* v. *Aponte*, 249 Conn. 735, 750–51, 738 A.2d 117 (1999). The present case, therefore, raises the issue of how best to balance the state's need to present evidence in these difficult cases with a defendant's right to a fair trial.

In *State* v. *Michaels*, supra, 136 N.J. 316, the New Jersey Supreme Court took a "somewhat extraordinary step" in concluding that a pretrial hearing was necessary to demonstrate the reliability of numerous child

witnesses, whom the defendant allegedly had sexually abused. In that case, the court was concerned that the investigators' techniques were so suggestive that they may have given rise to a "substantial likelihood of irreparably mistaken or false recollection of material fact's bearing on the defendant's guilt." Id., 320. The record revealed that the investigators engaged in repeated, incessant interrogations; asked blatantly leading questions; used mild threats, cajoling and bribery; provided positive reinforcement for inculpatory statements and negative reinforcement for exculpatory statements; vilified the defendant; encouraged the children to "keep [the defendant] in jail"; and provided the cooperative children with replica police badges. Id., 315.

In describing the parameters of this new procedure, the court stated that in order to trigger the taint hearing, the defendant must make some showing that the victim's statements had been the product of suggestive or coercive questioning. Id., 320. The court envisioned that the taint hearing would delve into issues regarding the investigator's techniques and that experts could be called upon to testify about the suggestiveness of those techniques. Id., 321. Under the *Michaels* approach, if the trial court finds at the conclusion of the taint hearing that the testimony is reliable, the parties can address the issue of suggestibility at trial by utilizing the same evidence that was presented at the hearing. Id., 323–24.

Other jurisdictions have received *Michaels* with mixed results. The majority of jurisdictions have rejected the *Michaels* approach on the ground that existing procedures that address the competency and credibility of witnesses are adequate to deal with concerns regarding child testimony. See, e.g., *People* v. *Montoya*, 149 Cal. App. 4th 1139, 1149, 57 Cal. Rptr. 3d 770 (2007) ("we reject *Michaels* in favor of our well-established competency jurisprudence"); *Pendelton* v. *Commonwealth*, 83 S.W.3d 522, 525–26 (Ky. 2002) (trial court properly denied pretrial *Michaels* hearing, issue

is matter of witness competency); *State* v. *Ruiz*, 150 P.3d 1003, 1008–1009 (N.M. App. 2006) ("[l]ike many other states, New Mexico rejects *Michaels* in favor of our well-established competency jurisprudence"); *State* v. *Olah*, 146 Ohio App. 3d 586, 591–92, 767 N.E.2d 755 (2001) ("[n]o Ohio appellate court has either followed *Michaels* or independently determined that a pretrial taint hearing is required if a child witness is potentially contaminated"); *Johnson* v. *State*, Court of Criminal Appeals, Docket No. 10-03-00134-CR, 2004 WL 2567112, *3 (Tex. Crim. App. November 10, 2004) (court declined to adopt *Michaels* procedure); *In re Dependency of A.E.P.*, 135 Wash. 2d 208, 230, 956 P.2d 297 (1998) (court declined to adopt pretrial taint hearing); see also *State* v. *Bumgarner*, 219 Or. App. 617, 632, 184 P.3d 1143 (2008) (rejecting *Michaels*, but arguing that issue is matter of credibility not competency), cert. denied, 555 U.S. 1101, 129 S. Ct. 927, 173 L. Ed. 2d 112 (2009).[8] Even in the minority of jurisdictions that have responded favorably to the *Michaels* rationale, courts have rejected the idea of a separate pretrial taint hearing and, instead, have permitted an inquiry into suggestiveness through the use of competency hearings. *Commonwealth* v. *Delbridge*, 578 Pa. 641, 663–64, 855 A.2d 27 (2003); *English* v. *State*, 982 P.2d 139, 146–47 (Wyo. 1999).

In Connecticut, strong policies exist to encourage and protect child testimony. See General Statutes § 54-86h ("No witness shall be automatically adjudged incompetent to testify because of age and any child who is a victim of assault, sexual assault or abuse shall be competent to testify without prior qualification. The

---

[8] The defendant argues that the suggestibility of a child witness involves neither credibility nor competency. On the other hand, the state argues that the issue does involve credibility. We eschew the debate over this distinction because the claims touch upon both aspects of a witness' testimony but, perhaps more importantly, a discussion of these distinctions ignores the modern trend toward the "treatment of competency as simply one aspect of the credibility of a witness." *State* v. *James*, 211 Conn. 555, 563, 560 A.2d 426 (1989).

weight to be given the evidence and the credibility of the witness shall be for the determination of the trier of fact."); *State* v. *Aponte,* supra, 249 Conn. 762–63 (*McDonald, J.,* concurring) (in cases of abuse, courts must make special accommodations for young witnesses because psychiatrists have shown that legal proceedings put child victim under prolonged mental stress and endanger emotional equilibrium). At the same time, we must acknowledge the trial court's gatekeeping function with regard to unreliable evidence. Although not directly on point, we find instructive our holding in *State* v. *Mukhtaar,* 253 Conn. 280, 750 A.2d 1059 (2000). In that case, we noted that statements that satisfy the requirements of *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), are presumptively admissible. *State* v. *Mukhtaar,* supra, 298–99. We further recognized, however, that such a statement "may have been made under circumstances so unduly coercive or extreme as to grievously undermine the reliability generally inherent in such a statement, so as to render it, in effect, not that of the witness." Id., 306. In such a case, the court must then exercise its gatekeeping function to protect the fairness of the fact-finding process and shield the jury from considering the substance of the unreliable statement. Similar to the *Michaels* approach, the court's gatekeeping function with respect to a *Whelan* statement is triggered only upon a showing by the party seeking to exclude it, that the statement was unreliable. Id., 307.

In the present case, we decline to decide whether some form of pretrial hearing is required to determine the reliability of E's[9] testimony because the defendant has failed to make any showing that such testimony was the product of unduly coercive or suggestive ques-

---

[9] Because the defendant was acquitted with respect to the charges arising from the alleged abuse of C, we confine our analysis to whether the defendant has made a showing of suggestibility with respect to the testimony of E.

tioning. E's initial statement to his mother that "sometimes [the defendant] touches my pee-pee" was made spontaneously and in age appropriate language, both of which are factors that support the statement's reliability. *State* v. *Aaron L.* 272 Conn. 798, 815–17, 865 A.2d 1135 (2005); see also *Doe* v. *United States*, 976 F.2d 1071, 1080 (7th Cir. 1992) ("the more spontaneous the statement, the less likely it is to be a product of fabrication, memory loss, or distortion"), cert. denied, 510 U.S. 812, 114 S. Ct. 58, 126 L. Ed. 2d 28 (1993); *United States* v. *Nick*, 604 F.2d 1199, 1204 (9th Cir. 1979) ("childish terminology" has been considered to have "the ring of verity and is entirely appropriate to a child of . . . tender years"). Moreover, none of the mother's subsequent questions were leading or coercive. The mother asked "[w]hen does [the defendant] do th[e] [touching]?" to which E replied "when they were watching TV on the couch." The mother then asked "where [the defendant] had touched [E]?" to which E responded by placing his hands over his penis and began moving his hands in a rubbing motion. Finally, the mother asked if E had ever touched the defendant and E responded "no." In addition, we need not decide whether the method of interviewing employed by Benzie is itself unduly suggestive, as the defendant suggests, despite its wide application, because E did not make any disclosures to Benzie during either interview. Accordingly, in the present case, the defendant has failed to make a showing that the testimony of E was the product of unduly suggestive or coercive questioning.[10]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[10] We leave for another day the question of whether a pretrial hearing is required to ensure a defendant his right to a fair trial in the event of a showing that a child witness' testimony was the product of coercive or suggestive questioning, and if so, in what context such a hearing would be appropriate, keeping in mind our concerns over the well-being of the child and the potential for abuse with such a procedure. See *People* v. *Jones*, 185 Misc. 2d 899, 903, 714 N.Y.S.2d 876 (2000) ("[t]aint hearings would likely

turn into 'mini-trials' at which the child complainant would have to recite, yet again, the often painful details of the allegations").