HAYETTE *v.* STATE
(Two Appeals in One Record)
[No. 72, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Ellis Levin,* with whom was *Maurice T. Siegel* on the brief, for the appellant.

*Ambrose T. Hartman, Special Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Charles E. Orth, Jr., Assistant State's Attorney,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

These are appeals from conviction and sentence, under two indictments, for violations of the lottery laws on two days, March 31, 1951 and April 6, 1951 respectively. The two cases, one against appellant alone, the other against him and others, were tried together before Judge Sherbow without a jury. Sentence of fine and imprisonment was imposed under each indictment, cumuluative as to the fines, concurrent as to imprisonment. In each case appellant was found guilty of (1) keeping a place for selling lottery tickets and (2) possession of numbers slips; in the first case he was also convicted of (3) selling a lottery ticket. If he was properly convicted on any count in each indictment, questions as to other counts are immaterial. The only questions raised here are (*a*) sufficiency of the evidence in each case and (*b*) admissibility of certain evidence in the second case.

For about twelve years appellant, a white man, has operated a grocery store at the same place in a Negro neighborhood. He has a "record" of past lottery convictions. He testified that he had gone out of that business about "the first of the year". A police officer testified that on March 31st he (presumably in "plain clothers") observed the store for about an hour, saw twenty-two colored men and six colored women enter the store, entered himself, bought a package of cigarettes

from appellant, and saw a colored man walk over to appellant, pass appellant coins and tell him "to put fifty cents on 768". Appellant contradicted this testimony both as to the number of persons who entered the store and the alleged "playing" of a number.

On April 6th Captain Emerson and four other officers (not including the one above mentioned) searched the premises under a search warrant. In the store they found some racing paraphernalia (as to which no evidence was obtained), and some blank pads, and arrested three negro men and one negro woman who entered the store, all of whom, when searched, were found to have numbers slips in their possession. These four negroes were indicted with appellant in the second case. The woman was found not guilty, the men guilty of possession of numbers slips.

After searching the store Captain Emerson and his squad searched the back yard, which is enclosed by a fence, with a locked gate, and the wall of an adjoining house. On an oil tank in the yard they found a cardboard box, which contained some trash and also a paper bag in which were twelve numbers slips showing seventy-seven numbers and $33.45 and some torn slips. Captain Emerson testified that he showed appellant the slips, appellant looked at them and said they were old, they could be a month old, Captain Emerson said they did not any of them look a month old to him and the paper was the same kind as the pads in the store. Appellant denied any knowledge of how the slips got there. His only suggestion was that "when the boy does the cleaning up in the store * * * he might have swept them off the floor some place and thrown them out with the trash. That's all I can say"; they might have been thrown on the floor; "* * * people are coming in and going out of my store all the time, all day long, and they are coming in there from time to time to get things they want to buy. They might have had them with them and thrown them on the floor. In that way it might

have been left there. I don't know." No "boy" who cleaned up trash was called as a witness.

In the second case appellant's basic contention is that the contents of the paper bag and the cardboard box were not properly admissible in evidence, (a) because there was no evidence to connect them with appellant and (b) because the slips were old, had ceased to be a lottery slips and had become mere trash. Whether last month's newspaper is still a newspaper or last month's lottery slip a lottery slip, we need not consider. Assuming that it is not, it is none the less, when found in quantity, evidence of keeping a lottery place in the present or the recent past. Of course, it must be connected with appellant. Mere discovery in a station-house cell after occupancy by defendant, *Sugarman v. State,* 173 Md. 52, 58-59, 195 A. 324, or on the person of the driver of an automobile in which defendant is a passenger, *United States v. DiRe,* 332 U. S. 581, 593-594, 68 S. Ct. 222, 92 L. Ed. 210, is not enough to show guilty connection with defendant. But the evidence of the connection need not be certain evidence of guilt; "* * * probability is the only requirement * * *". *Goldstein v. State,* 179 Md. 697, 22 A. 2d 471, 472; *Purviance v. State,* 185 Md. 189, 193, 44 A. 2d 474. In the instant case the evidence of connection is sufficient. The yard, no less than the store, was part of appellant's premises. We need not try to guess just how the box and contents got there. Apparently, "some one had blundered". If this evidence was admissible (as we hold it was) the trial court was not clearly wrong in inferring that it did not reach appellant's premises without his privity or knowledge and in finding him guilty of keeping a lottery place. To prove guilt beyond a reasonable doubt it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived. *Goss v. State,* 198 Md. 350, 353, 84 A. 2d 57, 58.

In the first case appellant contends that the officer's testimony is self-contradictory as to whether he watched the store an hour or half an hour, and his testimony

that he saw a number "played" without making an arrest, that twenty-eight persons entered the store in an hour—or half an hour—whereas only four entered during the three hours the Emerson squad was there, is so improbable that it is unworthy of belief. This argument need not be discussed in detail; it falls far short of convincing us that the trial court was clearly wrong in believing the officer and not believing appellant. Incidentally we may say that much of the testimony of appellant (some of it mentioned above) and of some of his co-defendants, relied on by him, is on its face readily "disbelievable". Ordinarily disbelieving evidence is not the same thing as finding evidence to the contrary. But on questions of scienter reason for disbelieving evidence denying scienter may also justify finding scienter. *Shelton v. State*, 198 Md. 405, 411-412, 84 A. 2d 76, 80.

In the first case appellant goes out of the record to assert that a few weeks after the trial of the instant cases, the same officer testified in a case before Judge Sherbow that he had seen the defendant in that case take a fifty cent bet on a number, the defendant proved an alibi and Judge Sherbow found him not guilty and ordered the record sent to the grand jury. We cannot embark on an excursion outside the record. If the evidence and the judgment in the instant case are to be impeached in this way, apparently this can be done only by the pardoning power. In passing it may be noted that this alleged second perjury on the part of the officer occurred before Judge Sherbow almost four weeks before the motion for a new trial in the instant cases was denied and six weeks before Judge Sherbow himself imposed sentence in the instant cases.

*Judgments affirmed, with costs.*