917 A.2d 1213

**Lamondes WILLIAMS**

v.

**STATE of Maryland.**

**No. 1963, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

March 8, 2007.

⬤➡339

Adrienne Dixon, Allison Pierson (Brian L. Zavin, Nancy S. Forster, Public Defender, on brief), for appellant.

Abraham F. Carpio (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Panel SALMON, EYLER, JAMES R., and SHARER, JJ.

EYLER, JAMES R., J.

Lamondes Williams, appellant, was convicted by the Circuit Court for Prince George's County, sitting non-jury, on three counts of failure to return a rental vehicle, in violation of Maryland Code (2002 Repl.Vol.), § 7–205 of the Criminal Law

Article ("C.L."). The court sentenced appellant to a total of three years imprisonment, all suspended, in favor of five years supervised probation. The court also ordered restitution in the amount of $20,592.

On appeal, appellant contends the evidence was legally insufficient to sustain the convictions and that the court erroneously interpreted the statute as not requiring the requisite *mens rea*. We shall hold that the evidence was legally sufficient but vacate the judgments, nevertheless, because the circuit court erroneously interpreted the statute and applied the wrong legal standard.

### Factual Background

The sole witness at trial, called by the State, was Mohamed Soumare, an assistant manager employed by the Darcars Ford dealership. Mr. Soumare testified to the following.

On several occasions prior to August, 2004, appellant had rented vehicles from Darcars Ford and had returned them without incident.

On August 5, 2004, appellant rented a 2004 Ford Taurus from Darcars Ford for the use of Kathleen Bledsoe and Ida Brooks, two of appellant's employees. Pursuant to the rental agreement, the vehicle was to be returned a week later. The vehicle was not returned until October 13. Between August 12 and October 13, Mr. Soumare called appellant more than ten times. In those calls, appellant advised Mr. Soumare that he would come to the dealership the day following the call and pay for the vehicle. On direct examination, Mr. Soumare testified that the vehicle was ultimately returned by appellant, and on cross-examination, he testified that he reported the vehicle stolen and it was found in the possession of Ida Brooks.

On August 16, 2004, appellant rented a 2004 Ford Excursion from Darcars Ford, for the use of Robert Jackson, appellant's employee. The vehicle was to be returned on August 30, but appellant did not return it to the dealership until September 20. Between August 16 and September 20, Mr. Soumare

called appellant every day and, on one occasion, sent a letter, requesting that the vehicle be returned.

On August 1, 2004, appellant rented a 2004 Lincoln Navigator from Darcars Ford, for the use of one of appellant's employees. The vehicle was to be returned on August 20, but was not returned until October 21. In the interim, Mr. Soumare called appellant, and appellant stated that he would come to the dealership to renew the rental agreement. Mr. Soumare's assistant also sent appellant a letter asking him to return the vehicle.

Mr. Soumare testified that appellant paid some monies to Darcars Ford but owed $5,040.71 for the Taurus, $7,521.76 for the Excursion, and $8,030.02 for the Navigator.

At the conclusion of trial, the court stated:

... I really don't have a problem with this. It is a very simple statute, and it says if someone—if they are under an agreement in a rental contract and there's a date certain when the rental contract ends, and if you don't return the motor vehicle on the date it ends, then it is proven beyond a reasonable doubt that you either refused to do it or—I haven't heard testimony that he refused, he said absolutely no, but he didn't do it he didn't do it, he never returned the rental cars, and he was under an agreement and the lease ended on a date certain. I think this is exactly what that provision was meant to address.

So I am going to find him guilty in all three cases.

### Discussion

Appellant was convicted for violating C.L. § 7–205(a), which provides:

A person who leases or rents a motor vehicle under an agreement to return the motor vehicle at the end of the leasing or rental period may not abandon the motor vehicle or refuse or willfully neglect to return it.

The standard for reviewing the sufficiency of the evidence is "whether, after considering the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *Conyers v. State*, 345 Md. 525, 557, 693 A.2d 781 (1997). In a non-jury action, we review the case on the law and the evidence, and we will not set aside the judgment on the evidence unless clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Maryland Rule 8–131(c).

Appellant observes that the statute requires proof that (1) he rented the vehicles under an agreement to return them at the end of the rental period, and (2) he abandoned, refused to return, or willfully neglected to return the vehicles. Appellant argues that the State failed to produce legally sufficient evidence to support a finding as to any of the three modalities contained in the second element, specifically, the requisite *mens rea.* Appellant further argues that the court treated the charges as strict liability offenses, thus applying the wrong legal standard.

The State contends that (1) the issues before us were not preserved,(2) the offenses are general intent crimes, (3) the evidence was sufficient to support a finding of the requisite *mens rea,* and (4) the court applied the correct legal standard.

We shall first address whether the issues were pre-served. In support of a motion for judgment of acquittal, a defendant must "state with particularity all reasons why the motion should be granted." Maryland Rule 4–324(a). A review of a claim of legal insufficiency of the evidence is available only for the reasons given in support of the motion. *Whiting v. State,* 160 Md.App. 285, 308, 863 A.2d 1017 (2004).

Appellant's counsel argued:

Judge, the question is whether or not—the statute is fairly specific, the State has to prove that the defendant refused or willfully neglected to return the vehicle. I think the evidence is he knew—they were in constant contact—he was going to bring it back. One of the vehicles was in the

possession of the defendant. That vehicle was returned. They got the vehicle from the police. I think there is some missing link.

In context, it seems rather clear that, in transcription, "not" was omitted from the third sentence. In essence, counsel argued that one of the vehicles was not in appellant's possession and that he intended to return the other vehicles. While counsel did not specifically mention intent or *mens rea,* the argument, in context, appears to relate to appellant's intent or state of mind. Consequently, we shall review appellant's contentions on their merits.

The relevant language in the statute provides that a lessee may not "abandon" a vehicle or "refuse" or "willfully neglect" to return it. The parties agree that the court did not find abandonment, and in any event, the evidence was legally insufficient to support such a finding, had one been made.

It is unclear whether the court based its conclusion on a finding of refusal or willful neglect, or both. The court stated that the State's witness did not testify that appellant had stated that he would not return the vehicles, but the court continued and stated that appellant, in fact, never returned the vehicles. One possible interpretation is that the court was commenting on the absence of direct evidence of refusal, as opposed to circumstantial evidence, or as the parties interpret the court's comments, the court might have found no refusal. Assuming the parties are correct, the basis of the court's ruling was willful neglect.

There is no reported appellate decision interpreting the statute in question. In that situation, as both parties have observed, we must apply basic principles of statutory construction.

As this Court recently explained in a similar situation,[1]

---

[1] In *Allen v. State,* 171 Md.App. 544, 911 A.2d 453 (2006), this Court interpreted C.L. § 7–203 for the first time subsequent to its codification as part of the Criminal Law Article, which occurred in 2002. § 7–203 is

[w]e must construe ... [C.L. § 7–205] to discern the actual intent of the legislature in enacting it. *See Chow v. State,* 393 Md. 431, 443–44, 903 A.2d 388 (2006). We discern the legislature's intent by application of the usual rules of statutory construction. *See id.* Those rules require first and foremost an examination of the language of the statute itself, and, absent an ambiguity in the statutory text, we "will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute." *Stanley v. State,* 390 Md. 175, 182, 887 A.2d 1078 (2005). That is to say, " '[w]here the words of [the] statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, the Court will give effect to the statute as the language is written.' " *Id.* at 184, 887 A.2d 1078 quoting *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557 (2003). *Allen,* 171 Md.App. at 555, 911 A.2d at 459.

Focusing on the plain language of the statute, both parties agree that it does not create a strict liability offense, and some form of scienter is required. The ordinary, dictionary definition of the terms "abandon,"[2] "refuse,"[3] and "willfully neglect,"[4] all involve knowing and voluntary conduct.

While all three of the operative terms in § 7–205 are used frequently, in every day speech or in statutes and caselaw, it is

---

the successor to Article 27, § 349(unauthorized use), but is substantively different.

**2.** Abandon[ment] is defined as the "relinquishing of a right or interest *with the intention* of never again claiming it." Black's Law Dictionary 1 (7th ed.1999) (emphasis added).

**3.** Refus[al] is defined as the "denial or rejection of something offered or demanded." *Id.* at 1285.

**4.** Willful neglect is defined as "[i]ntentional neglect; deliberate neglect." *Id.* at 1055; *see accord Singer Co., Link Simulation Systems Div. v. Baltimore Gas & Electric Co.,* 79 Md.App. 461, 479–80, 558 A.2d 419 (1989) (concluding that the phrase " 'willful neglect' suggests intentional, conscious, or known negligence—a knowing disregard of a plain or manifest duty.").

helpful to place this statute in context. Section 7–205 was enacted in 2002 as part of the enactment of the Criminal Law Article. *See* ch. 26, § 2, 2002 Laws of Maryland. The statute is substantively the same as its predecessor, which appeared at Article 27, § 206, and which was repealed in 2002.

What is now § 7–205 was first enacted in 1927. *See* ch. 533, § 1, 1927 Laws of Maryland. Chapter 533, § 1 added seven new sections to the Code, one of which was the predecessor to § 7–205, which obviously was inspired by the growing use of the automobile. Some of the seven new sections contained a specific intent requirement, and some, including the section in question, did not. At the time of enactment, the new statute appeared in the Md. Ann.Code (1957), Art. 27, § 206, under the subheading "Fraud—By Hirers,", and it appeared under the same subheading just prior to the enactment of the Criminal Law Article. The Code subheadings have changed over time, but the statute has generally appeared near theft and unauthorized use offenses, by whatever name such offenses have been known at any point in time. Section 7–205 currently appears under the heading "unlawful use of goods," following "theft" in §§ 7–101 through 7–110, and "related crimes," in §§ 7–113 through 7–116.

In 1978, the legislature enacted a consolidated theft statute, currently C.L. §§ 7–101 through 7–110, merging larceny and larceny-like common law offenses into the crime of theft. Generally, those crimes, pre-merger, required a trespassory taking and a specific intent to deprive the owner of property. *Whitehead v. State*, 54 Md.App. 428, 446–47, 458 A.2d 905 (1983). Theft, post-merger, remains a specific intent crime, requiring a specific intent to deprive the owner of property, in some instances permanently and, in some instances, temporarily. *See* C.L. § 7–104.

Unauthorized use offenses were not merged. While they required, and still require, a trespassory taking and scienter, the scienter is a general intent to commit the criminal act, *see Davis v. State*, 104 Md.App. 290, 293, 656 A.2d 326 (1995). They do not require a specific intent, either to deprive

the owner or for any other specific purpose. *In re Lakeysha,* 106 Md.App. 401, 424–425, 665 A.2d 264 (1995); *see also McGrath v. State,* 356 Md. 20, 27–28, 736 A.2d 1067 (1999). *See* Maryland's Consolidated Theft Law and Unauthorized Use, Judge Charles E. Moylan, Jr., MICPEL (2001) for an excellent discussion of the history and analysis of Maryland's theft and unauthorized use law.

The statute in question, unlike unauthorized use offenses generally, does not require that the initial act of taking possession of a motor vehicle be without permission. The crime embodied in § 7–205, now called unlawful use, is analogous to unauthorized use, however, with respect to the element of scienter.

██ Section 7–205 requires a general intent, i.e., that the acts of abandonment, refusal, and willful neglect be done knowingly and voluntarily, with actual knowledge of the circumstances. It does not require an intent beyond that just stated.

Appellant concludes that the evidence was legally insufficient because, while criminal intent may be inferred from circumstances, the circumstances in this case do not support an inference of guilt beyond a reasonable doubt. According to appellant, "absent evidence that [appellant], and not one of his employees, was in physical possession of the vehicles at the end of the rental periods, the trial court, acting as trier of fact, would have had to resort to pure speculation to determine whether [appellant] acted intentionally when he failed to return the vehicles."

As mentioned above, the evidence in this case was legally insufficient to support a finding of abandonment, and no such finding was made.

██ We conclude that the evidence was legally sufficient to support a finding with respect to the other two modalities. Refusal requires an intent not to comply with a duty to return the vehicle. The word neglect, standing alone, indicates the omission of a duty through inadvertence or

inability. The term willful neglect, however, has a different meaning. Refusal and willful neglect substantially overlap, both requiring a knowing and voluntary disregard of a duty. Refusal requires an intent not to return, and willful neglect requires a knowing disregard of the duty to return. The evidence was legally sufficient to support a finding that appellant refused or willfully neglected to return the vehicles. The evidence permitted an inference that appellant had the ability to return the vehicles, that he had actual knowledge that the vehicles were overdue, that he had a duty to return them, and that he possessed the requisite *mens rea.*

With respect to appellant's argument that the State was required to introduce evidence that the vehicles were in his physical possession, there was evidence that the vehicles were placed in appellant's possession, he had actual knowledge of his duty, he impliedly acknowledged an ability to comply with that duty, but failed to do so.

■ Even though the evidence was legally sufficient to sustain the convictions, we shall vacate the judgments because, based on the court's comments, it appears the court did not regard scienter as an element of the crime. The court's comments reflect a failure to distinguish between civil and criminal. A failure to return a vehicle on a due date, standing alone, is not sufficient. A general criminal intent is required. As a result of the above, appellant is entitled to a new trial.

**JUDGMENTS VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**