Argued and submitted October 21, 2008, at Burns High School, Burns; affirmed
July 15, petition for review denied October 7, 2009 (347 Or 259)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CHRISTOPHER DYLAN GUY,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0700111; A136764

212 P3d 1265

Jason E. Thompson argued the cause for appellant. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Katherine H. Waldo, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Karla H. Ferrall, Assistant Attorney General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals a judgment of conviction for three counts of sexual abuse in the first degree, ORS 163.427, and three counts of sexual abuse in the third degree, ORS 163.415,[1] all based on incidents involving his stepdaughter. He assigns error to the trial court's denial of his motion for a judgment of acquittal, arguing that his stepdaughter's inconsistent and contradictory recounting of events so deprived her testimony of credibility that the state's evidence was legally insufficient to support a finding of guilt. Defendant also contends that the trial court's denial of his motion for a judgment of acquittal violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We affirm.

We take the following facts from the record. In November 2006, defendant's then 15-year-old stepdaughter disclosed to police that defendant had been sexually abusing her for two years. Defendant was charged with 12 counts of first-degree sexual abuse and six counts of third-degree sexual abuse. As a result of the victim's allegations, the state also took the victim and her siblings into protective custody. In June 2007, the juvenile court held a jurisdictional hearing at which the victim testified.

The trial in this case occurred one month later, and the evidence against defendant derived almost entirely from the testimony of the victim, which revealed the following.

---

[1] ORS 163.427(1) provides, in part:

"A person commits the crime of sexual abuse in the first degree when that person:

"(a) Subjects another person to sexual contact and:

"(A) The victim is less than 14 years of age[.]"

ORS 163.415(1) provides:

"A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being under 18 years of age."

The term "sexual contact" refers to "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6).

When the victim was 11 years old, it caught her attention that defendant regularly undressed her and put her to bed. Initially, she was not bothered because she believed "that's what any dad does to a little girl." However, by the time the victim was 13 years old, she was uncomfortable with defendant's behavior. At the victim's bedtime, defendant regularly accompanied her to her bedroom and, once there, insisted that she should not "sleep with any clothes on." Defendant then would remove the victim's shirt and pants, leaving only her bra and underwear. After the victim removed her bra, defendant would hug the victim and, using his fingers, touch her breasts (for as long as 10 seconds) until she pulled away, climbed into bed, and wrapped herself in a blanket. Defendant would then lie in bed with the victim, his stomach against her back, and "snuggle" with her. The victim also testified that, although defendant's hands touched her buttocks at these times, his hands did not touch her bare skin because she was covered with the blanket. The victim testified that defendant touched her breasts "more than ten times" and that he touched her buttocks more often than he touched her breasts.

On some occasions, when the victim pulled away, defendant asked what was wrong. Defendant told the victim that he loved her and that she was a beautiful girl. On these occasions, defendant never specifically commented on the victim's breasts, but he did tell her that she had "a very beautiful [sic] proportioned body." The victim could not tell whether defendant was sexually aroused during those encounters.

After the victim testified, defendant introduced the victim's testimony from the juvenile court jurisdictional hearing in order to impeach her trial testimony. At the juvenile court hearing, the victim had testified that, at her bedtime, defendant would regularly accompany her to her bedroom, undress her, and "tuck [her] in." She also recounted that defendant lay in bed with her but that, because she had wrapped herself in her blanket, he did not join her under the covers. The victim further testified that, when he hugged her, defendant sometimes touched her buttocks, and did so at least "four or five" times. The victim testified that, although defendant's habit of touching her made her uncomfortable,

she struggled to explain exactly why, noting that he did not "grope" her "butt or grab [her] crotch or anything."

During the victim's testimony to the juvenile court, she also stated that, on one or two occasions, defendant had encouraged her not to exercise too much because excessive exercise would flatten her breasts and that, after taking her into a bathroom, he used his hand to flatten one of her breasts to demonstrate. When the juvenile court asked for clarification about the number of times that defendant had touched her breasts, the victim responded that defendant had done so on other occasions. However, in response to questioning from the juvenile court, the victim reiterated that defendant had twice touched her breasts while in the bathroom and stated that, on both occasions, he had touched her bare breasts. She stated that those touches were not like "a husband would touch a wife."[2] The victim recounted no other incidents in which defendant had touched her breasts.

Also during her juvenile court testimony, the victim stated that, eight months before she revealed defendant's abuse to the police, she was admitted to a local hospital for psychiatric evaluation because she was exhibiting cutting behavior. When asked, as part of the intake procedure, whether she had ever been the victim of sexual abuse, the victim denied any history of sexual abuse. At the juvenile court hearing, the victim acknowledged that, at the hospital, she had indicated that "nothing sexual" had occurred between her and defendant, but explained that, to her, the word "sexual" connoted "rape and stuff" and, because defendant had never raped her, she always answered "no" to the question of whether she had been a victim of sexual abuse. The victim testified that, although she believed defendant's conduct to be "wrong" at the time, she did not reveal his conduct to her mental health care providers because she "didn't want to be stuck" in the hospital or in a foster home or to have her parents and her family "ripped apart."

---

[2] Defendant also elicited testimony from the victim at the juvenile court hearing that, during the period of the described conduct, she had become sexually active and that she and her partner had engaged in sexual foreplay, including the touching of her breasts and body.

At the trial in this case, the victim testified that she had not been truthful at the juvenile court hearing. She noted that, during her testimony to the juvenile court, her mother, her brother, and defendant—none of whom believed her account of events—had been present in the courtroom. Ultimately, at the trial in this case, the victim testified that defendant touched her breasts and her buttocks and that those touches were, in fact, like "touches between a man and his wife."

At the close of the state's evidence, defendant moved for a judgment of acquittal on all of the charges against him, arguing that, given the inconsistencies between the victim's testimony at trial and at the juvenile court hearing and her admission that she had previously been dishonest under oath, the victim's credibility had been "thorough[ly]" impeached. Defendant contended that, in light of the victim's lack of credibility and the absence of any physical evidence, he was entitled to acquittal on all of the charges. The trial court denied defendant's motions and, sitting as trier of fact, subsequently found him guilty.

■■ On appeal, defendant renews his argument regarding inconsistencies in the victim's testimony. Defendant does not dispute that, if the trier of fact believed the victim's trial testimony, there was sufficient evidence of his guilt. Rather, his contention is that, because of the inconsistencies in the victim's various accounts of events, "the state presented 'insufficient' evidence" to support a finding of guilt. The state maintains that the trial court correctly denied defendant's motion.

■ Contrary to defendant's contention, his impeachment of the victim's trial testimony did not render that testimony insufficient to support the judgment against him. It is well established in Oregon that the determination of a witness's credibility is the sole province of the trier of fact. *See, e.g., State v. Milbradt*, 305 Or 621, 629-30, 756 P2d 620 (1988) (the assessment of a witness's credibility is for the trier of fact); *State v. Walgraeve*, 243 Or 328, 333, 413 P2d 609 (1966) (the determination of credibility is central to the jury's truth-finding function). This court previously has rejected arguments that, because there are inconsistencies in a primary

witness's recounting of events or inconsistencies in evidence, there is insufficient evidence to support a conviction. *See, e.g., State v. Wolfe*, 56 Or App 795, 799-800, 643 P2d 404 (1982) (in a prosecution for rape, the victim's "equivocal" and inconsistent testimony did not entitle the defendant to a judgment of acquittal); *State v. Miller*, 53 Or App 493, 498, 632 P2d 493 (1981) (inconsistencies between an eyewitness's description of the perpetrator and the defendant's appearance at trial did not entitle the defendant to a judgment of acquittal); *State v. Hyde*, 28 Or App 809, 813, 561 P2d 659, *rev den*, 278 Or 621 (1977) ("[I]t is for the jury, not the court, to resolve conflicting evidence."). When a defendant moves for a judgment of acquittal, it is not proper for the court to hold that there is reasonable doubt simply because there are conflicts in the evidence. *State v. Krummacher*, 269 Or 125, 137, 523 P2d 1009 (1974). Rather, all such conflicts must be resolved in favor of submitting the matter to the jury. *Id.*

■      When this court reviews a trial court's denial of a motion for a judgment of acquittal, we determine whether a rational factfinder, drawing reasonable inferences and making reasonable credibility choices, could find the essential elements of the offense beyond a reasonable doubt. *State v. Lotches*, 331 Or 455, 498, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). We conclude that, in this case, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.

The victim offered explanations for why she had previously denied being the victim of sexual abuse and why she had been untruthful in her juvenile court testimony. If the trier of fact chose to accept those explanations and to believe that her testimony at trial was truthful, that testimony established that defendant regularly accompanied the victim to her bedroom, where he undressed her, touched her breasts for as long as 10 seconds, told her that she had a "very beautiful [*sic*] proportioned body," and lay in bed with her while she wore only underwear. That evidence was sufficient to allow the trier of fact to infer that defendant touched the victim's sexual or intimate parts and that defendant's conduct was intended for his sexual gratification and therefore qualified as sexual contact within the meaning of ORS 163.305(6).

■    We also reject defendant's contention that he was entitled to acquittal as a matter of due process. Under the Fourteenth Amendment, there is sufficient evidence to convict a defendant if, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979). As we explained in the preceding discussion, the state presented sufficient evidence to meet that standard. *See State v. Walton*, 311 Or 223, 242, 809 P2d 81 (1991) (noting that the standard for our review of a trial court's denial of a motion for a judgment of acquittal was the same as that identified in *Jackson*). Accordingly, the trial court correctly denied defendant's motion for a judgment of acquittal.

Affirmed.