982 A.2d 348

Rodney Wayne BIBLE

v.

STATE of Maryland.

No. 138, Sept. Term, 2008.

Court of Appeals of Maryland.

Oct. 14, 2009.

142

Juan P. Reyes, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for Petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and JOHN C. ELDRIDGE, (Retired, Specially Assigned).

ADKINS, J.

Petitioner Rodney Wayne Bible challenges his conviction for committing sex offenses proscribed under two sections of the Sexual Crimes subtitle of the Criminal Law Article of the Maryland Code (2007 Repl.Vol.) (hereinafter "CL"). He contends that his brief touching of a seven year old child on her buttocks on the top of her clothing was not "sexual contact," which is defined as "an intentional touching of the victim's or actor's genital, anal, or *other intimate area* for *sexual arousal or gratification,* or for the abuse of either party." CL § 3–301(f)(1) (emphasis added). In support of his contention, Bible submits that (1) the buttocks are not covered by the statute, and (2) the evidence produced by the State was not sufficient to establish the necessary *mens rea.* Although we hold that the buttocks are an "intimate area" for purposes of the statute, we consider the evidence adduced at trial was not sufficient to establish beyond a reasonable doubt that Bible intentionally touched the victim "for sexual arousal or gratification," and accordingly, shall reverse.

## STATUTORY PROVISIONS

Sexual offense in the third degree is committed when an individual "engage[s] in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim[.]" CL § 3–307(a)(3). Sexual offense in the fourth degree proscribes "sexual contact with another without the consent of the other[.]" [1] CL § 3–308(b)(1).

---

1. Because these offenses differ only in aspects that are not in dispute—namely, that the alleged victim is under 14, that Bible is more than four years older than the alleged victim, and that there was no consent—the following discussion applies equally to both sections.

## FACTS & LEGAL PROCEEDINGS

Around 4:00 p.m. on August 25, 2006, seven year-old Hannah S. accompanied her mother and two siblings to the Goodwill Store in Hagerstown. Upon arriving, Hannah, without her mother or siblings, proceeded to the area of the store containing toys, which also housed furnishings and electronics. Though Hannah's mother ("Mrs. S.") or sister periodically checked on her, the only other individuals in that area of the store while Hannah was present were Curtis Howell, a Goodwill employee, and the defendant forty-nine year-old Rodney Wayne Bible. Hannah and her family were in the store for approximately thirty to forty minutes. While they were in the store, Hannah did not notify anyone of a problem.

When Hannah left the store and returned with her family to their car, and noticed Bible getting into the vehicle next to them, she became "upset" and "anxious." She pointed to Bible and said to her mother, "Mommy, that man's a pervert ... [h]e touched me." Mrs. S followed Bible for a short while and recorded the make, model, color, and license plate number of Bible's car. After returning to the Goodwill Store and informing Howell of Hannah's statements, Mrs. S. proceeded to the police station and made a report of what happened.

The police traced the car to Bible and interviewed him at his apartment. The police officer later testified that when he asked Bible if he was present at the Goodwill store two days earlier, "[a]t first, [Bible] denied that he was there. He wasn't for sure [sic] if he was there or not. And then as we kept talking, he did say he was there" looking at VCRs. Bible also said he hadn't noticed any children in the area of the store in which he was shopping. During the police investigation, Hannah identified Bible in a photo array as the man who touched her in the store.[2] Howell was able to identify Bible as having been present in the store, but did not observe Bible touch Hannah. Also presented at trial was surveillance video

---

2. Though police showed Mrs. S. the same photo array before they showed it to Hannah, Mrs. S. was unable to identify the defendant.

of the area in which the incident took place. However, the video did not provide continual coverage of the area because the surveillance system alternated between cameras, returning to the area in which Hannah and Bible were located every two to four seconds. The video showed both individuals in the area together, with Bible leaving the area at 4:29 PM, and Hannah leaving one minute later. The tape did not show any contact between Bible and Hannah.

Though the State offered testimony by Hannah's mother, two police officers, and Howell, the only evidence regarding the touching and the surrounding circumstances was supplied by Hannah. It is crucial to examine her testimony closely:

[Prosecutor]: Now at some point while you were up there playing with that toy . . ., those toys, did you see him again?

[Witness]: Yes.

[Prosecutor]: Where was he?

[Witness]: He was like walking around me.

[Prosecutor]: Did you . . ., did you see his face while he was walking around you?

[Witness]: Yes.

[Prosecutor]: And did you keep playing with the toys?

[Witness]: Yes.

[Prosecutor]: Did he ever stop walking around you?

[Witness]: Yes.

[Prosecutor]: And what did he do?

[Witness]: He like . . ., I can't remember.

[Prosecutor]: Now when you say you can't remember, you can't remember if he stopped?

[Witness]: I can't remember what he was doing.

[Prosecutor]: Okay. Do you remember what he was doing with you?

[Defense]: Objection at this point, Your Honor.

[The Court]: Overruled. You can answer.

[Witness]: No.

[Prosecutor]: Was he playing with toys?

[Witness]: No.

[Prosecutor]: Did he talk to you?

[Witness]: No.

[Prosecutor]: Well can you tell the ladies and gentlemen of the jury how close he got to you?

[Witness]: He got like a foot away.

[Prosecutor]: Was he in front of you, or behind you, or next to you?

[Witness]: Behind me.

[Prosecutor]: And when he was behind you, Hannah, did anything happen?

[Witness]: Yes.

[Prosecutor]: Can you tell us what happened?

[Witness]: He touched my behind.

[Prosecutor]: Now did he touch your behind more than once?

[Witness]: Yes.

[Prosecutor]: Can you tell the ladies and gentlemen how he touched your behind?

[Witness]: He touched it like two seconds.

[Prosecutor]: Okay. Was it with his hand?

[Witness]: Yes.

[Prosecutor]: Okay, was it on top of your shorts?

[Witness]: Yes.

[Prosecutor]: And was it on top of your underpants?

[Witness]: No.

[Prosecutor]: Did you have shorts . . ., did you have underpants on under your shorts?

[Witness]: Yes.

[Prosecutor]: Okay, where was his hand?

[Witness]: On my behind.

[Prosecutor]: Okay. But over top of your shorts?

[Witness]: Yes.

[Prosecutor]: And your underpants were inside your shorts, right?

[Witness]: Yes.

[Prosecutor]: Okay. Now you said it was about two seconds, and did he touch . . ., did he just pat you?

[Defense]: Objection, Your Honor, leading.

[Witness]: No.

[The Court]: Overruled. The witness is seven years old. There's got to be some leeway.

[Prosecutor]: Were these . . ., so these were not two pats on the behind?

[Witness]: No.

[Prosecutor]: What did it feel like?

[Witness]: It felt like . . ., I can't remember.

[Prosecutor]: But are you sure that it was more than one time?

[Witness]: Yes.

[Prosecutor]: Hannah, what did you do when he did that?

[Witness]: I went down to my mom and we left.

At the close of the State's case-in-chief, Bible moved for a judgment of acquittal of the charges of sexual offense in the third degree, sexual offense in the fourth degree, and assault in the second degree.[3] He argued that because there was no evidence establishing the touching besides Hannah's testimony, and because her testimony failed to describe the touching in a sufficient manner or show that it was intentional, no reasonable juror could find his guilt beyond a reasonable doubt. The court denied the motion. Bible rested his case without presenting any evidence and again moved for a judgment of acquittal, which was also denied. The jury found Bible guilty on all charges.

On appeal, Bible argued, inter alia, that the evidence was legally insufficient to sustain his conviction for sexual offense

---

**3.** Mr. Bible has not challenged his conviction for assault, and we therefore do not consider it.

in the third and in the fourth degree. In an unpublished opinion, a panel of the Court of Special Appeals affirmed Bible's conviction. First, the court held that Bible had not preserved the issue of sufficiency of the evidence for appellate review because he failed in his motion for judgment of acquittal to specifically argue which elements of the crimes were lacking. The court nevertheless proceeded to address the appeal on the merits and affirm the conviction, holding "that there was sufficient evidence presented which could have persuaded a rational trier of fact beyond a reasonable doubt that the [Bible]'s touching of the victim was intentional, was in an intimate area, and was for no purpose other than his arousal or gratification." The court based this decision upon the facts that Bible touched Hannah's behind more than once, "that the touching was not just a 'pat,'" that Hannah's described Bible to her mother as "a pervert," and that Bible initially denied to the police that he was in the Goodwill store that day.

## PRESERVATION OF ISSUE ON APPEAL

As a preliminary matter, the State argues that Bible's claim of insufficiency of the evidence for the charge of sexual offense in the third degree is not properly before this Court because Bible did not argue in his trial motion for acquittal which specific elements of the crime were unsupported by evidence. *See State v. Lyles,* 308 Md. 129, 135–36, 517 A.2d 761, 764–65 (1986). Under Md. Rule 8–131(a), "[o]rdinarily, the appellate court will not decide any . . . issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." In *State v. Bell,* 334 Md. 178, 188, 638 A.2d 107, 113 (1994), we held "that an appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will."

*See also Casey v. Mayor of Rockville,* 400 Md. 259, 322, 929 A.2d 74, 113 (2007) (discretion will be exercised infrequently). In *Fisher v. State,* 367 Md. 218, 240, 786 A.2d 706, 719–20 (2001), we explained:

> [A] principal purpose of the preservation requirement is to prevent "sandbagging" and to give the trial court the opportunity to correct possible mistakes in its rulings. That purpose is not served here. Clearly, the trial court fully understood the ramifications of its decision to submit second degree felony murder, and it is a practical certainty that any objection on non-cognizability grounds that counsel might have made for the record would not have resulted in withdrawing felony murder from the jury.

In his motion for judgment, Bible's counsel argued the following:

> [The victim] couldn't describe what [the touching] was like.... [I]f somebody accidentally brushed against somebody for sake of argument, that in and of itself wouldn't be ..., it's not an intentional act. It would be, I guess, an inadvertent act. Without her in some affirmative way saying that she was grasped as opposed to merely touched, I would suggest to the Court that there's not really evidence of an intentional act having occurred at that point. There's just no evidence of it one way or the other.

At the close of all evidence, Bible simply incorporated his previous arguments. Thus, although Petitioner did not refer to the requirement that the touching be "for the purpose of sexual arousal or gratification," he argued generally that the intent requirement was not satisfied.

Shortly thereafter, the trial court gave instructions to the jury, including specific requirements for proof of each offense. With respect to both the third degree and fourth degree sex offenses, the judge instructed, that "[s]exual contact means the intentional touching of the victim's intimate parts for the purpose of sexual arousal, or for gratification," as required by CL § 3–301(f)(1). This instruction certainly reflects that the trial court knew that both third degree sexual contact and

fourth degree sexual contact required this proof of sexual intent when it denied Bible's motion for judgment of acquittal and allowed the case to go to the jury. Under these circumstances, we do not view consideration of this issue on appeal as "sandbagging" the trial court.

The Court of Special Appeals recently addressed a comparable non-preservation argument in *Williams v. State*, 173 Md. App. 161, 167–68, 917 A.2d 1213, 1217 (2007). There, where the appellant was charged for failing to return a rental car, appellant's counsel argued:

> Judge, the question is whether or not—the statute is fairly specific, the State has to prove that the defendant refused or willfully neglected to return the vehicle. I think the evidence is he knew—they were in constant contact—he was going to bring it back. One of the vehicles was in the possession of the defendant. That vehicle was returned. They got the vehicle from the police. I think there is some missing link.

*Id.* The court considered the issue of *mens rea* to be preserved even though counsel failed to mention intent or *mens rea:*

> In context, it seems rather clear that, in transcription, "not" was omitted from the third sentence. In essence, counsel argued that one of the vehicles was not in appellant's possession and that he intended to return the other vehicles. **While counsel did not specifically mention intent or *mens rea*, the argument, in context, appears to relate to appellant's intent or state of mind. Consequently, we shall review appellant's contentions on their merits.**

*Id.* at 168, 917 A.2d at 1217 (emphasis added). Here, defense counsel's general argument that the State failed to prove that the touching was intentional, without mentioning the sexual aspect of the intent, calls for similar treatment.

Fairness and the interests of judicial economy also guide our decision to consider this issue. In *Moosavi v. State*, 355 Md. 651, 736 A.2d 285 (1999), we addressed an issue not raised in the Court of Special Appeals in order to avoid an inevitable

successful post-conviction proceeding. We explained our rationale:

> [I]f [the criminal offense charged] is clearly inapplicable to [a defendant's] conduct, and if the only reason for not reversing his conviction is the failure of appellate counsel to raise the issue in the Court of Special Appeals, under the circumstances of this case [a defendant] would be entitled to relief in an appropriate post conviction proceeding collaterally attacking his conviction. In light of this, fairness and interests of judicial economy justify granting relief on direct appeal.

*Id.* at 661–62, 736 A.2d at 290. Here, if we were to refuse review of this issue because Bible's counsel failed to explicitly refer to proof of sexual intent in his motion for judgment of acquittal, Bible would likely be entitled to post-conviction relief in light of our holding on the merits.[4] The same is true of counsel's failure to argue lack of intent with respect to sexual offense in the third degree, despite his arguing it with respect to the fourth degree.[5]

The State also avers that we should not decide whether the buttocks is an "intimate area" within the meaning of the statute. As we indicated before, we have discretion under Rule 8–131(a) whether to review an issue not raised below. As we indicated in *Jones v. State*, 379 Md. 704, 714–15, 843 A.2d 778, 784 (2004):

> There is no fixed formula for the determination of when discretion should be exercised, and there are no bright line rules to conclude that discretion has been abused.... [W]hen presented with a plausible exercise of this discretion, appellate courts should make two determinations concerning the promotion or subversion of 8–131(a)'s twin goals. First, the appellate court should consider whether

---

4. The omission of this specific point could not be considered a strategic decision by counsel, as nothing could be gained by it.

5. We surmise that counsel assumed that there was no intent requirement with respect to sexual offense in the third degree because that crime includes the four-year age differential as one of its elements.

the exercise of its discretion will work unfair prejudice to either of the parties. . . . Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice.

We see no prejudice to either of the parties in addressing the issue of whether the buttocks are an "intimate area" within the meaning of CL § 3–301(f)(1). Bible, of course, raises the issue, and therefore has waived any prejudice. The State has no interest in precluding resolution of this issue. Reaching the issue does not impair the orderly administration of justice, as we are not reversing on an issue the trial court lacked an opportunity to decide because our conclusion favors the conviction entered below. Further, deciding this question will provide guidance to trial courts, which are likely to be faced with the issue in other cases, as well as to lawyers and the public generally. Thus, although Bible did not raise the issue of whether buttocks are an "intimate area," we exercise our discretion under Rule 8–131(a) to reach that issue.

In sum, we shall reach the merits of the two issues on which certiorari was granted: (1) whether buttocks are an "intimate area" within the meaning of CL § 3–301(f)(1), and (2) whether the evidence adduced at trial was sufficient to support a finding, beyond a reasonable doubt, that Bible touched the victim's buttocks for the purpose of sexual arousal or gratification.

## "INTIMATE AREA" UNDER THE STATUTE

 We recently restated the principles that guide a court when interpreting a statute.

In construing a statute, we look first to the plain language of the statute, and if that language is clear and unambiguous, we look no further than the text of the statute. A plain reading of the statute assumes none of its language is superfluous or nugatory. We neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or

limit the statute's meaning. We have often stated that if the language of the statute is not ambiguous, either inherently or by references to other relevant laws or circumstances, our inquiry as to legislative intent ends. If the meaning of the plain language is ambiguous or unclear, to discern legislative intent, we look to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole.

*Bost v. State*, 406 Md. 341, 349–50, 958 A.2d 356, 361 (2008) (quotation marks and citations omitted). "The language of the statute itself is the primary source of [legislative] intent; and the words used are to be given their ordinary and popularly understood meaning, absent a manifest contrary legislative intention." *Williams v. State*, 329 Md. 1, 15, 616 A.2d 1275, 1282 (1992) (quotation marks and citation omitted). We have also, when examining the meaning of a particular statute or phrase, considered the judgments of other jurisdictions and their treatment of statutory provisions analogous to those in Maryland law. *See, e.g., Stachowski v. Sysco Food Servs. of Baltimore, Inc.*, 402 Md. 506, 528–31, 937 A.2d 195, 207–09 (2007) (reviewing federal law and the law of sister states in deciding the meaning of a phrase under the Maryland Workers' Compensation Act).

CL Section 3–301(f)(1) proscribes touching the genital or anal areas,[6] but does not otherwise specify what constitutes an "intimate area[.]" As no other statutory provision defines the term, we assume the legislature intended the word "intimate" to be understood as it is in common parlance. "Intimate" is commonly defined as "[v]ery personal; private[.]" *See, e.g.,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 917 (4th ed., Houghton Mifflin Co. 2006). "Private," in turn, is defined as "[s]ecluded from the sight, presence, or intrusion of others[.]" *Id.* at 1396, 937 A.2d 195. Certainly a reasonable person would consider the buttocks to be very personal and would find unwanted contact with that area to be particularly

---

**6.** The State does not contest that the buttocks are not included within a person's genital or anal areas.

intrusive. Our society generally treats the buttocks as an intimate area of an individual's body. Usually, this part of the body is kept covered in public, and indeed in most private contexts. Community standards of decency are not static, and we recognize that in some settings, fashion and public propriety tolerate greater exposure of the human body, including portions of the buttocks, than was permitted in the past. Nevertheless, we are confident that society still generally considers the buttocks to be private areas an individual would not expect to be casually touched, even by a friend.

These community standards are reflected in Maryland legislative enactments. The Maryland General Assembly has treated touching of the buttocks as prohibited sexual conduct in other sections of the Criminal Law Code. In title 11 of the Maryland Criminal Law Article, which governs indecency and obscenity, the legislature defined "sexual conduct" as any touching of "the genitals, buttocks, or pubic areas of an individual; or breasts of a female individual." CL § 11–101(d)(3); *see also* CL § 3–902(a)(4) (defining "[p]rivate area of an individual" in the statute proscribing visual surveillance with prurient intent as "the naked or undergarment-clad genitals, pubic area, buttocks, or female breast of an individual.").

We have also suggested in our past precedent that generally the buttocks were an intimate area of the body. In *Paulino v. State,* 399 Md. 341, 924 A.2d 308 (2007), we held that a law enforcement officer was unreasonable in his search of a criminal defendant. The officer manipulated the cheeks of the defendant's buttocks to obtain a better view of the defendant's anal cavity in order to determine if the defendant was hiding drugs there. *Id.* at 346, 924 A.2d at 311. The majority distinguished the cases cited by the dissent that suggested the search was reasonable by noting that the searches conducted in those cases "d[id] not relate to the manipulation of the intimate parts of a suspect's person." *Id.* at 354, 924 A.2d at 316 n. 4. Although this opinion did not involve an interpretation of the phrase "intimate areas" in CL § 3–301, it does support the assertion that the buttocks have been regarded by

this Court as an "intimate" part of the human body in the common usage of that word.

Other jurisdictions have statutes, like Maryland's, which utilize the general term "intimate parts" or a similar phrase. *See, e.g.,* Ala.Code § 13A–6–60(3) (2009) (defining "sexual contact" as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party"); Haw.Rev.Stat. § 707–700 (2009) (" 'Sexual contact' means any touching ... of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts."); *see also* Mont.Code Ann. § 45–2–101(67) (2007); N.Y. Penal Law § 130.00(3) (2009); Or.Rev.Stat. § 163.305(6) (2007); Wash. Rev.Code § 9A.44.010(2) (2009). In several of these states, courts have interpreted intimate parts to include the buttocks. *See, e.g., State v. Weese,* 189 Mont. 464, 616 P.2d 371, 374 (1980); *People v. Boykin,* 127 A.D.2d 1004, 513 N.Y.S.2d 310, 311 (N.Y.App.Div.1987).

In addition, other jurisdictions' courts have held the buttocks to be an intimate area. The Court of Appeals of Washington has determined that the buttocks, as well as the hips, were covered by their statute because they were "sufficiently intimate part[s] of the anatomy that a person of common intelligence has fair notice that the nonconsensual touching of them is prohibited...." *In re Adams,* 24 Wash. App. 517, 601 P.2d 995, 997 (1979). The Oregon Court of Appeals, in affirming a conviction for sexual abuse where a defendant touched a victim's buttocks, held that the buttocks were an intimate area because the victim in that case considered them intimate and any reasonable person would have recognized the implication of such contact. *State v. Stacy,* 113 Or.App. 141, 830 P.2d 624, 625 (1992). In *Parker v. State,* 406 So.2d 1036, 1039 (Ala.Crim.App.1981), the Alabama Court of Criminal Appeals held "that the term 'intimate parts' .... refers to any part of the body which a reasonable person would consider private with respect to touching by another.

We believe that the thigh and the stomach are ... intimate parts...." We are not aware of, nor has Mr. Bible drawn our attention to, any court that has interpreted the phrase "intimate areas" in a sexual crimes statute to exclude the buttocks.

After considering all of the above, we conclude that the buttocks are an intimate area within the meaning of CL Section 3–301(f)(1) because a reasonable person would recognize the extremely personal nature of that part of the anatomy. The touching of the buttocks is therefore proscribed by CL Sections 3–307(a)(3) & 3–308(b)(1).

## LEGAL SUFFICIENCY

Our standard of review for sufficiency of trial evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" when the evidence is presented in the light most favorable to the State. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citation omitted) (emphasis in original). The jury as fact-finder "possesses the ability to 'choose among differing inferences that might possibly be made from a factual situation' and [the appellate court] must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference." *State v. Suddith,* 379 Md. 425, 430, 842 A.2d 716, 719 (2004) (citations and footnote omitted). If the evidence "either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt[,]" then we will affirm the conviction. *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998). These principles are simpler in formulation than they are in application. When reviewing findings made by a trier of fact, there is a fine line between the improbable yet permissible inference and the legally unsupportable speculation. This distinction is all the more difficult in criminal cases, where the requirement that guilt be proved beyond a reasonable doubt is somewhat at odds with the deference owed to a fact-finder's determinations.

Because "intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence." *State v. Smith*, 374 Md. 527, 536, 823 A.2d 664, 669 (2003). Circumstantial evidence is sufficient to sustain a conviction, but not if that evidence "amount[s] only to strong suspicion or mere probability." *Taylor v. State*, 346 Md. 452, 458, 697 A.2d 462, 465 (1997). By definition, circumstantial evidence requires the trier of fact to make inferences, but those inferences must have a sounder basis than "speculation or conjecture." *Id.* This is why "this Court has held that when the evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained." *Id.; see also Wilson v. State*, 319 Md. 530, 573 A.2d 831 (1990) (holding that the facts that a housekeeper had access to and cleaned the area from which property was stolen were insufficient to support a conviction for theft). Bible argues that the evidence established that he intentionally touched Hannah, but does not prove that he did so with the purpose of sexual arousal or gratification.

The phrase in CL § 3–301(f)(1) that prohibits contact "for sexual arousal or gratification, or for the abuse of either party" establishes a specific intent requirement. Thus, the State must prove two elements beyond a reasonable doubt: (1) the fact of the touching, and (2) the intent to do so for sexual arousal or gratification. There is no doubt that there is sufficient evidence that a touching occurred—Hannah testified that Bible touched her on her buttocks on top of her clothes.

The matter of Bible's intent is more problematic. "No presumption of intent may be raised by law from an act." *Thornton v. State*, 397 Md. 704, 714, 919 A.2d 678, 683 (2007) (*quoting Morissette v. United States*, 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952)). With respect to specific intent crimes,

generally, there are two components to every crime, the *actus reus* or guilty act and the *mens rea* or the guilty mind or mental state accompanying a forbidden act. . . . [T]he State must prove that the defendant acted with a specific intent . . . [T]he substantive mental element, . . . can be proven by direct or circumstantial evidence[.]

*Thornton,* 397 Md. at 714, 919 A.2d at 683 (citations and quotation marks omitted). As we have explained, specific intent

is not simply the intent to do the immediate act but embraces the requirement that the mind be conscious of a more remote purpose or design which shall eventuate from the doing of the immediate act. . . . [Specific intent crimes] require[ ] not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.

*Id.*

Evidence sufficient to support a finding that a touching was done with the purpose of sexual arousal or gratification may be deduced from the circumstances surrounding the touching, or from the character of the touching itself. Circumstances surrounding the touching that would aid in the determination of whether it was for the purposes of sexual gratification might include whether the defendant and victim were strangers or knew each other; whether either party was undressed; whether anything was spoken between them; whether the touching occurred in public or in a secluded area; whether the defendant displayed any signs of sexual arousal; or whether the defendant behaved in nervous or guilty manner when another person came upon the scene. With respect to the touching itself, the force of the touching, the motion (was it a pat, a rub back and forth, a circular motion, a brush), the duration, and the frequency are all important. This list is not exhaustive, but merely descriptive of the type of circumstantial evidence that would be relevant.

The State has not cited any cases where a sexual contact conviction withstood appellate review based on such slim evidence establishing intent as is presented here. Neither has our research uncovered any cases, with respect to either Maryland or other jurisdictions, in which the evidence used to establish the defendant's specific intent was as sparse as the circumstantial evidence presented in this case. Where other jurisdictions have upheld convictions, the evidence presented provided stronger support for an inference of sexual arousal. In a Connecticut case, the fact that the defendant "rubbed his hands over [the victim's] genital area in a back and forth motion[,]" and that the defendant waited until another adult was out of the room to do so was sufficient evidence to sustain the conviction. *State v. Michael H.*, 291 Conn. 754, 970 A.2d 113, 118 (2009). Similarly, the New York Appellate Division found the facts that a defendant waited until he was alone with a victim before placing his hand on her buttocks, stared at her while doing so, and followed the victim when she left the room, adequate to support a conviction. *See People v. Stewart*, 57 A.D.3d 1312, 870 N.Y.S.2d 157, 160–61 (2008). Finally, in *State v. Guy*, 212 P.3d 1265, *3–*4 (Or.Ct.App. July 15, 2009), the Oregon Court of Appeals found sufficient the evidence that the defendant touched the victim's breasts for as long as ten seconds, lay in bed with the victim while she was wearing only underwear, and told the victim that she had a "very beautiful [*sic* ] proportioned body."

In the present case, Hannah stated that Bible touched her for "like two seconds" twice and expressed to her mother that Bible was a "pervert." Beyond that, neither we nor the jury know anything else about the circumstances of the incident. Hannah was not able to remember or articulate the character of the touching. She did not say whether it was a rub, a squeeze, or a pat. She was not able to say where on the buttocks Bible touched her. She testified that Bible did not say anything to her; nor could she see what he was doing behind her. We are presented with no statement by him suggesting sexual intent, no indication of his sexual arousal, no other conduct by him suggesting a sexual interest in the child.

There is certainly suspicion that when Bible touched Hannah, he did so for sexual arousal or gratification. But suspicion is not sufficient for conviction. *See Taylor*, 346 Md. at 458, 697 A.2d at 465. We do not doubt for a moment that Hannah was truly upset by the incident at issue in this case. When we are dealing with the charge of a sexual offense against a child, it is tempting to allow suspicion to substitute for sufficient proof, because of the offensive nature of such a crime, and our desire to protect children. But we must remain faithful to the rule of law, and here the law requires that the defendant's sexual intent be proven beyond a reasonable doubt. The State's burden of proof is not inversely proportionate to the age of its witness.

The evidence at trial established that Bible touched Hannah on the buttocks, and that Hannah was sufficiently upset by it to call him a pervert when speaking to her mother in the car. He later denied to the police that he was in the store that day, a circumstance that adds a smidgen to the suspicion. But there are many other reasons Bible could have lied to the police about his actions, including a fear that he would be charged with shoplifting or some other crime. Many people fear involvement with the police. Yet without some other evidence that the touching was for the purposes of sexual gratification or arousal, the proof was legally insufficient to sustain the petitioner's conviction for sexual offenses in the third and fourth degrees.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE CONVICTIONS FOR THIRD AND FOURTH DEGREE SEXUAL OFFENSES AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR RE-SENTENCING ON THE CONVICTION FOR ASSAULT. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WASHINGTON COUNTY.**

Judges BATTAGLIA and ELDRIDGE join in judgment only.

HARRELL and MURPHY, JJ., Dissent.

Dissenting Opinion by HARRELL, J., which MURPHY, J., joins.

It took the Washington County jury in this case 30 minutes to decide that Bible, a 49–year–old man, touched the buttocks of a 7–year–old female victim (while she was unescorted at the time and in the toy section of a store), for his sexual arousal or gratification, or to abuse the victim. The victim knew his conduct was wrong. Twelve jurors in Washington County quickly recognized that it was wrong. I submit that any reasonable juror would know it was wrong. The Court of Special Appeals agreed. Bible and the Majority see it otherwise (I refer here to Majority as encompassing also Judges Battaglia and Eldridge who join the judgment only. This leaves the opinion, however, as a plurality expression of views of only 3 judges of the Court). Worse yet, the Plurality opinion elects to superimpose its view of the evidence on that of the finder-of-fact. I am compelled to dissent.

At the threshold, I give the Devil its due. The Plurality opinion is a well-crafted and rational-sounding (and therefore beguiling) piece of judicial writing. It explains and attempts to justify (as well as I imagine is possible) its reversal of Bible's conviction. I cannot give it high marks, however, for reaching the obvious conclusion (with which I agree) that a person's posterior can be an intimate area (even for people who flaunt theirs). It is the Plurality opinion's legal sufficiency analysis, however, where the train really runs off the tracks (Plurality slip. op. at 17–22).

After paying lip service to the fact-finder's discretion to draw reasonable inferences from direct and circumstantial evidence and an appellate court's duty to render a disciplined and deferential review of the exercise of that discretion (Plurality slip op. at 17), the Plurality opinion glides effortlessly into second-guessing the Washington County jury here.

Drawing on what we said in *Thornton v. State,* 397 Md. 704, 714, 919 A.2d 678, 683 (2007), about proof of specific intent, the Plurality opinion conflates identifying a "presumption of intent" (a bad thing) with drawing an inference of *mens rea* from circumstantial evidence (a permitted thing). Plurality slip op. at 19. Characterizing the fact-finder's ability here to draw an inference from the evidence as at best one of speculation or suspicion as to Bible's "more remote purpose or design ... [for] doing of the immediate act," to wit, touching Hannah's buttocks for sexual arousal or gratification (Plurality slip op. at 21), the Plurality opinion supplants its rationalized Olympian view of the evidence for that of the rank-and-file body entrusted with that primary task.

I cannot point too emphatically to the Plurality's ignoring of context. Hannah was not hanging by her jump rope from a precipice as Bible reached up to push her to safety, while touching her behind. He was not steadying her from a bad tumble because she lost her balance. With her mother and siblings elsewhere in the store, she presumably was safe and secure in the toy section of the Hagerstown Goodwill Store when Bible offensively initiated touching of one of her intimate areas for his purposes. By a rational process of elimination in this context, a reasonable jury could conclude, beyond a reasonable doubt, that he did so solely to gratify or arouse his prurient sexual interests. Indulging in spinning out theories of possibly benign motives for his conduct in these circumstances is not productive or something in which appellate courts should engage. The jury did its job.

A reasonable jury could have (and apparently did) infer the requisite specific intent for the crime from Bible's lying initially to police whether he was even at the crime scene. *See Kolker v. State,* 230 Md. 157, 159, 186 A.2d 212, 213 (1962) (quoting *Hayette v. State,* 199 Md. 140, 145, 85 A.2d 790, 792 (1952) ("[O]n questions of scienter reason for disbelieving evidence denying scienter may also justify finding scienter.")). Moreover, the evidence here does not generate a disputed issue as to a benign reason for why this defendant deliberately would make unsolicited physical contact with his hand on an

intimate portion of the minor's body. The conviction should stand.

Judge MURPHY authorizes me to state that he joins in this dissent.